[Cite as *Turner v. Turner*, 2024-Ohio-2200.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Weston K. Turner                                          Court of Appeals No.  L-23-1091

      Appellee                                          Trial Court No.  DR2021-0006

v.

Alisa Turner                                          **<u>DECISION AND JUDGMENT</u>**

      Appellant                                          Decided:  June 7, 2024

* * * * *

John James Manore, III, for appellee.

Matthew E. Exton, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** Appellant, Alisa Turner, appeals from the judgment of the Lucas County

Court of Common Pleas, Domestic Relations Division, granting a divorce to appellee,

Weston K. Turner. For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case and the Facts

### Initial Filings and Changes of Counsel

{¶ 2} On January 8, 2021, appellee filed a complaint for divorce against appellant. He mailed interrogatories and a first request for production of documents to appellant on January 29, 2021. Appellant filed an answer and counterclaim for divorce on February 10, 2021.

{¶ 3} On February 26, 2021, appellant's initial counsel, Margaret Beck, filed a motion for leave to withdraw as counsel of record. This motion was granted on March 3, 2021. On March 16, 2021, attorney Joshua Nolan filed an entry of appearance on behalf of appellant. Three months later, on June 15, 2021, Nolan filed a motion to withdraw explaining that there had been a breakdown in the attorney-client relationship. This motion was granted on June 17, 2021.

{¶ 4} On August 26, 2021, a third attorney, Rose Mock, filed an entry of appearance on appellant's behalf. The following day, the trial court issued a pre-trial order providing that the parties would exchange all discovery by September 23, 2021, and would file any discovery related motions by September 30, 2021.

{¶ 5} On September 24, 2021, appellant's counsel filed a motion for suggestion of diminished capacity and appointment of a guardian for appellant ("motion for guardianship").

{¶ 6} On October 25, 2021, appellee filed a motion to compel and request for discovery sanctions. A hearing on the matter was conducted before a magistrate on

2.

November 9, 2021. At that time, appellant's counsel acknowledged that appellant had not yet completed discovery and that she had no valid defense for appellant's failure. That same day, attorney Mock filed a motion for leave to withdraw as appellant's counsel.

{¶ 7} The magistrate issued an order on November 10, 2021, ordering that all discovery be completed by November 24, 2021. In addition, the magistrate scheduled a compliance hearing for December 9, 2021, to address appellee's pending motion.

**Hearing on Attorney Mock's Motion for Guardianship and Motion to Withdraw**

{¶ 8} On November 10, 2021, the trial court conducted a hearing on appellant's motion for guardianship and on Mock's motion for leave to withdraw as counsel. Mock and counsel for appellee appeared in person, appellee appeared by Zoom, and appellant participated telephonically.

{¶ 9} The trial court inquired of appellant whether she understood the motions that had been filed. Appellant replied in the affirmative. Appellant opposed the motion for guardianship, stating that she wished to secure independent counsel to represent her in the matter, and that her counsel had no proof in support of counsel's allegations. As for her counsel's motion to withdraw, appellant told the court "[i]f she doesn't want to represent me, then we have to go by that."

{¶ 10} The trial court questioned Mock regarding the basis of her motion for guardianship and why she wished to withdraw as counsel for appellant. In response, Mock testified: (1) that she had come to a point where she was not able to help appellant; (2) that appellant had withdrawn her authority to provide a typed version of her discovery

3.

responses to appellee's counsel, choosing instead to have a previously submitted handwritten version stand as her response; and (3) that there was a real question as to whether appellant understood the procedural process. Mock finished with the following statement:

> "* * * I'm just asking for some help, either a guardian be appointed or maybe there is a different lawyer that she would have a better fit with. I just don't know. But I know that if she and I are to remain in the current status quo, I don't have a lot of confidence that we are going to make a lot of progress."

{¶ 11} Asked by the court for his input, counsel for appellee stated:

> Well, Your Honor, I mean I have been doing this a long time * * *. And I have had difficult clients myself. Um, I don't know if that necessarily justifies the appointment of a guardian under the allegation of diminished capacity or incompetence. There are very specific statutory definitions of what those two items are. I don't believe that being difficult necessary [sic] elevates itself to that. Um, I'm not opposed to Ms. Mock's withdraw, that obviously is within the preview [sic] of the court as to whether that should be granted, but I am opposed to getting a guardian just because [we] have someone who is being difficult.

{¶ 12} Next, the trial court heard from appellant, who stated:

> Um, I heard what my attorney, my, my – I have some static in my phone but I heard majority of what she is saying. What I understand it to be is that she doesn't want to work with me. And um, and as such, if she doesn't want to work with me I would hope that you would grant that this lady be released from my case. And then I would be able to find another attorney to represent me in the capacity that I should have.

4.

**{¶ 13}** Ultimately, the trial court granted Mock's request to withdraw and continued the motion for guardianship until after appellant's new attorney had an opportunity to review the file and talk to appellant. On November 12, 2021, the court issued an order that memorialized the rulings made in open court on November 10, 2021, and, further, granted appellant's request for time to retain new counsel to represent her in opposing the motion for guardianship. In addition, a pre-trial conference was scheduled for November 30, 2021.

### Additional Proceedings

**{¶ 14}** At the November 30, 2021 pre-trial, appellant informed the court that she had not yet contacted or retained new counsel, but that she intended to do so.

**{¶ 15}** On December 3, 2021, the trial court issued a pre-trial order providing that appellant was to fully comply with all discovery requests, and that her failure to comply could result in sanctions. On December 9, 2021, a second hearing on appellant's motion to compel was conducted before the magistrate, at which time appellant was granted until January 3, 2022, to comply with appellee's discovery request.

**{¶ 16}** On December 27, 2021, appellant, then proceeding pro se, filed interrogatories and a first request for production of documents directed to appellee. On December 29, 2021, she filed a notice of appearance/self-representation with the court. And on January 7, 2022, she filed a motion for continuance of the scheduled pre-trial on February 1, 2022. The motion was denied.

5.

{¶ 17} On January 10, 2022, appellee filed a request for additional time to respond to discovery, which was granted. On January 18, 2022, appellee filed a certificate of service of his response to appellant's interrogatories and first request for production of documents.

{¶ 18} On January 31, 2022, a fourth attorney, Owen Kalis, filed a notice of appearance as counsel for appellant. On February 1, 2022, Kalis filed a motion for continuance of a pre-trial that was scheduled for that day. The motion was denied, but the in-person pre-trial was converted to an "attorneys only" telephone pretrial. At the pretrial, the matter of the appellant's outstanding response to discovery was discussed, as was appellant's prior counsel's motion for guardianship.

{¶ 19} On March 22, 2022, appellee filed a certificate of service of interrogatories and a second request for production of documents directed to appellant.

{¶ 20} On April 5, 2022, the court conducted another "attorneys only" telephone pre-trial The trial court's pre-trial order journalized on April 11, 2022, summated the results of that pretrial, stating in part:

> [Appellant's] prior counsel filed a Motion for Suggestion of Diminished Capacity and Appointment of Guardian on September 24, 2021. *Defendant's current counsel represents Defendant is competent and is not otherwise diminished such that she requires a guardian ad litem. [Counsel for appellant] shall review the filing and file a dismissal of same prior to the next scheduled hearing.*
>
> Counsel represent [appellee] has complied with all discovery requests. Counsel state that [appellant] continues to fail to provide complete responses to discovery requests.
>
> * * *

6.

> [A]ppellant's Motion to Compel and Request for Discovery Sanctions is hereby set for hearing on June 28, 2022, before Judge Lewandowski.
>
> * * *
>
> Failure to provide complete discovery responses by the scheduled hearing may result in any and all sanctions permitted in the civil rules and applicable statutes, including but not limited to prohibiting the noncomplying party from presenting evidence as to certain issues and ordering the noncomplying party to pay attorney fees and costs.

(Emphasis added.)

**Hearing on Appellee's Motion to Compel and Request for Sanctions**

{¶ 21} On July 21, 2022, a hearing was conducted before the trial court on appellee's motion to compel and request for sanctions. Appellee alleged that appellant had not provided satisfactory responses to discovery requests. Appellant's defense was, essentially, that, yes, she had. Appellant additionally suggested that to the extent that she did not comply with discovery, all four of her attorneys in this matter were at fault for failing to assist her.

{¶ 22} After a protracted hearing in which appellant interrupted, argued with, and defied the trial judge's instructions, and argued with and defied her own counsel, the trial court granted appellee's motion to compel and ordered sanctions in the form of attorney fees. In addition, the trial court warned appellant that to the extent she failed to produce documents relevant to the issue of support, such documents would be excluded from consideration at trial. The trial court scheduled and confirmed with all present a final hearing date of December 8, 2022, with trial to commence at 9:00 a.m.

7.

## Continued Proceedings

{¶ 23} On July 29, 2022, appellant, pro se, filed a transcript request for the hearing conducted on July 21, 2022.

{¶ 24} On August 2, 2022, attorney Kalis filed a motion to withdraw as counsel for appellant. The motion was granted on August 10, 2022.

{¶ 25} On August 15, 2022, the trial court issued an order stemming from the July 21, 2022 hearing, stating:

> Pursuant to Civ.R. 37(B), [appellant] shall be prohibited from supporting or opposing claims or defenses to the extent discovery was not provided, and from introducing evidence related thereto. Specifically, [appellant] is prohibited from introducing evidence of either party's monthly expenses, income from any and all sources, financial accounts, and her disability status at trial.

{¶ 26} Also on August 15, 2022, the trial court issued a firm trial order, setting certain compliance dates for submission of witness lists and exhibits, and reaffirming the trial date of December 8, 2022, at 9:00 a.m. Among other orders, the trial court provided:

> [T]he trial date allows [appellant] sufficient time to retain new counsel if she so chooses. Failure to obtain counsel by the scheduled trial will operate as a waiver of counsel and [appellant] will be held to the same standard as an attorney at trial. If [appellant] does retain counsel, they shall immediately enter their appearance with the court. The Court may schedule a further pre-trial conference at that time.

8.

**Final Hearing**

{¶ 27} On December 8, 2022, the trial court conducted a final hearing on appellee's complaint for divorce. Prior to the commencement of the hearing, appellant asked for a continuance, saying that she needed an attorney. When the court tried to explain that a firm trial order had been issued on August 15, 2022, and that appellant had been present in court when the trial date was set, appellant interrupted and argued, insisting that she had not been present on that date. Pressed by the judge, appellant did acknowledge that she had called the court both the day before and the morning of the final hearing to say that she was sick.

{¶ 28} Having failed to persuade the court that a continuance should be granted, appellant stated to the court, "Well you do it, and you go ahead do it and I'm going to appeal this." She then exited the courtroom, refusing to participate in the final hearing.

{¶ 29} The trial court proceeded with trial, taking testimony from appellee and appellee's corroborating witness, and receiving into evidence some 44 exhibits submitted by appellee.

{¶ 30} Appellee testified that he and appellant were married on July 30, 1998, in Fort Wayne, Indiana, and that there was one child born as issue of the marriage, who was then emancipated. Appellee testified as to his residency in Lucas County, Ohio, immediately preceding the filing of his complaint for divorce on January 8, 2021, and as to his current residency in Florida. Appellee testified that appellant was not then pregnant. He further testified that appellant had been guilty of gross neglect of duty and

9.

extreme cruelty towards him, and he presented examples of same. Appellee's testimony on grounds was corroborated by his witness Valerie Turner, who had come in from New Jersey to give her testimony.

{¶ 31} Appellee testified to the filing of his court affidavit schedules in 2021, which included his income information from that time, and to the absence of his wife's income information, owing to the fact that she maintained separate financial accounts. Appellee testified to the fact that appellant had operated a home healthcare business before appellee left the residence, but then stopped when he moved out.

{¶ 32} Appellee testified to his Amended Court Schedule III, filed December 3, 2021, which evidenced his own personal expenses as well as the expenses he paid for the marital residence, all of which totaled approximately $10,000 per month. Appellee testified that he was an engineer, and that at the time of the filing of his complaint he earned $176,000 annually. He testified to a current base salary of $165,000, and total earnings of $207,106.59 in 2021, which included his bonus car allowance.

{¶ 33} Appellee testified that he retained a real estate appraiser to appraise the marital home, that appellant did not cooperate with the appraisal, and that the home was appraised for $565,000. Appellee provided evidence and testimony that the principle owed on the mortgage loan was $301,427. Appellee also testified to the ownership of certain motor vehicles, including a 2018 BMW that he drove, which had a mortgage loan; a 2009 Jeep driven by the parties' son; and a leased 2020 Jeep driven by appellant.

10.

**{¶ 34}** Appellee testified regarding his retirement accounts, including a 401(k), with a balance of $27,347.87; a rollover IRA, with a balance of $618,482.91; and a SEP-IRA, with a balance of $69,046.20. He testified that he was unsure of appellant's retirement accounts or benefits (as she would not produce information), but he believed she had between $10,000 - $15,000. He further testified to the parties' joint tax filings between 2018 and 2019, and his individual tax filings for 2020 and 2021. He testified that he filed individually in 2020 and 2021, because appellant refused to cooperate in a joint filing.

**{¶ 35}** Appellee also testified about the marital debts of the parties, as evidenced by three credit card balances: One account had a balance of $20,696.87; a second account had a balance of $29,998.72; and a third, which was opened in 2013 to pay for a pool at the marital home, had a balance of $8,324.21.

**{¶ 36}** Appellee also testified and presented evidence as to: (1) appellant's annual tax free VA Benefits in the amount of $43,738.56 per year; (2) the fact that appellant was a registered nurse who during the marriage earned a master's degree in health care administration (a degree that appellee testified he paid for); and (3) the fact that appellant owned and operated a business, "Needed Healthcare, Inc.," which at the time of the trial was still an active, for-profit corporation. He also testified that registered nurses in Ohio earned an average of $71,640 per year, with a range of salaries from $66,979 to $85,750, and that appellant had let her nursing license lapse as of October 31, 2021.

11.

**{¶ 37}** Finally, appellee testified that, even without temporary orders, during the pendency of the divorce he paid marital expenses, including the mortgage on the house, utilities, and car payment for appellant.

**{¶ 38}** Appellee's witness, Valerie Turner, testified that appellant had difficulty interacting with other people and that, consequently, she was unable to keep a job.

### Decision and Final Judgment Entry of Divorce

**{¶ 39}** On February 23, 2023, the trial court issued its decision, and on March 15, 2023, a final judgment entry of divorce, which incorporated the trial court's decision of February 23, was journalized.

### Decision

### Division of Marital Property

**{¶ 40}** Citing R.C. 3105.171, the trial court recognized that marital property must be divided equally between the parties, unless such a division would be inequitable. The court further recognized that any separate property must be awarded to the party to whom it belongs. And, finally, the court, citing R.C. 3105.171(C)(3), specified that "the division of property must be made prior to and without regard to an award of spousal support."

### Marital Home

**{¶ 41}** The court concluded with respect to the marital home that "it is equitable to divide the equity [in the marital home] equally between the parties. Therefore, each party shall receive half of the equity in the marital home."

12.

## Vehicles

{¶ 42} The court awarded the 2009 Jeep and the 2018 BMW to appellee, and the 2020 Jeep lease to appellant. Noting that only two payments remained on the 2020 Jeep lease, the trial court concluded that appellant "shall assume responsibility for the lease payments for the remainder of her lease."

## Retirement Accounts

{¶ 43} The court ruled that appellant would retain any and all retirement assets in her name; that appellee was awarded his 401(k) (with a balance of $27,347.87) and SEP-IRA (with a balance of $69,046.20); and that appellant would receive 40% of appellee's rollover IRA (with a balance of $618, 482.91) by Qualified Domestic Relations Order.

## Debt

{¶ 44} The court ruled that appellee would assume responsibility for the three outstanding credit card balances, which totaled $59,019.80. The court further ruled that appellant would be held responsible for any and all debt currently in her name.

## Personal Property

{¶ 45} In dividing up the personal property, the court awarded appellee certain items that he had requested, which were valued in total at $8,260.00. The remainder of the property, valued at $31,900, was awarded to appellant.

13.

## Total Division

{¶ 46} The court's summary of the total division revealed that appellee's total award amounted to $563,241.11, and appellant's total award amounted to $425,403.33. In rendering the awards, the court stated:

> The division * * * is not equal. The Court finds that an equal division of the parties' property would be inequitable considering the length of time the parties have lived separately, the fact that [appellee] now resides in Florida, and the fact that [appellee] paid the bills associated with the marital home, all vehicles of the parties, and his personal expenses and bills during the pendency of this cause without a court order.
>
> Therefore, the Court finds the division of assets and liabilities contained herein fair and equitable.

## Spousal Support

{¶ 47} The trial court noted that although appellant had made a claim for spousal support in her counterclaim for divorce, she failed to support her request at trial. Nevertheless, the court addressed her request.

{¶ 48} Before making the award, the trial court acknowledged that "[i]n determining whether an award of spousal support is reasonable in amount, duration, and terms of payment, the Court must examine the statutory factors set forth in R.C. 3105.18(C).

{¶ 49} The court went on to state that the parties were married for 24 years; that appellee was 52 years old and appellant, 55 years old; and that appellant did not testify as to her health at trial.

14.

{¶ 50} Next, the court considered appellee's education and income, and that of appellant. The court noted that appellee paid for appellant to obtain her master's degree during the marriage.

{¶ 51} The court considered that appellee was ordered to assume marital credit card debt in the amount of $59,019.80, and that appellant was receiving at least $43,738.56 annually, not including any income she may have received from her business, while appellee had paid "all expenses of the parties." In giving appellee credit for payment of the parties' expenses, the court emphasized that appellee had made these payments notwithstanding the lack of temporary orders in this case. The court went on to state that temporary orders were never issued, because appellant repeatedly failed to comply with the court's local rules that would have allowed her to request them.

{¶ 52} Ultimately, the court stated that "[b]ased on a review of the factors set forth by statute and the record in its entirety, the Court awards spousal support to [appellant] as follows: * * * [Appellant] is awarded the marital home as and for spousal support. [Appellant] shall receive the marital home, including all equity therein, free and clear of any claim of [appellee]. * * * [Appellee] shall not be entitled to seek payment from [appellant] for his half of the equity, the amount of $131,786.15, awarded previously in this Decision."

15.

**Final Judgment Entry of Divorce**

{¶ 53} In its final judgment entry of divorce, the court incorporated the February 23, 2023 decision and orders. In addition, the court dismissed appellant's counterclaim for divorce, finding that appellant had failed to support it.

{¶ 54} As in its decision, the trial court noted that in making an award of spousal support "the Court must examine the statutory factors set forth in R.C. 3105.18(C)." Citing R.C. 3105.18(B), the court further noted that it had the power to award spousal support "in real or personal property, or both."

{¶ 55} The court additionally specified that it had considered the factors set forth in R.C. 3105.171 (regarding the equitable division of marital and separate property) in structuring the property division in this matter.

{¶ 56} The court restated, with some additional detail, its spousal support/real property award, its division of personal property, its division of debts, and its division of pension plans and retirement accounts.

{¶ 57} The court also set forth the process for implementation of the agreement, detailing when and how the parties were to take possession of all items of property to which each was entitled under the terms of the agreement.

{¶ 58} It is from this judgment entry that appellant appeals.

16.

## Assignments of Error

{¶ 59} Appellant asserts the following assignments of error:

I.      The trial court erred as a matter of law when it failed to resolve appellant's motion for the appointment of a guardian due to diminished capacity.

II.     The trial court erred as a matter of law when it failed to equitably divide the marital property.

III.    The trial court erred as a matter of law when it made a spousal support order before equitably dividing property.

IV.     The trial court erred as a matter of law when it failed to consider the necessary statutory factors in awarding spousal support.

V.      The trial court erred as a matter of law when it denied appellant due process by proceeding to trial after denying appellant's request for continuance to obtain counsel.

**Analysis**

**Standard of Review**

{¶ 60} "The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case." *Feldman v. Feldman*, 2009-Ohio-4202, ¶ 11 (8th Dist.) citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). Thus, when reviewing a trial court's (1) division of marital property; or (2) award of spousal support; or (3) determination to grant a divorce without independently determining a party's competency, an appellate court applies an abuse of discretion standard. *Raff v. Raff*, 2005-Ohio-3348, ¶ 21 (5th Dist.) citing *Martin v. Martin,* 18 Ohio St.3d 292 (1985) (a review of a trial court's division of marital property is governed by abuse of discretion standard); *King v. King,* 2019-Ohio-1561, ¶ 8 (6th Dist.), citing *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67 (1990) (a review of a trial court's judgment awarding spousal support is governed by abuse of discretion standard); *McMillan v. McMillan,* 2021-Ohio-698, ¶ 24 (8th Dist.) (abuse of discretion standard applied to trial court's decision to grant a divorce without independently determining husband's competency to testify). Likewise, the grant or denial of a continuance is reviewed under an abuse of discretion standard. *State v. Unger,* 67 Ohio St.2d 65, 67 (1981); *see also Vaughan v. Vaughan,* 2010-Ohio-5928, ¶ 9 (9th Dist.). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

18.

**First Assignment of Error**

{¶ 61} Appellant argues in her first assignment of error that the trial court erred as a matter of law when it failed to resolve appellant's motion for the appointment of a guardian due to diminished capacity.

{¶ 62} As indicated above, following the November 10, 2021 hearing on attorney Mock's motion for guardianship and motion to withdraw, the trial court held in abeyance any decision on the motion for guardianship until after appellant's new attorney had an opportunity to review the file and talk to appellant. As stated in the record, appellant's new counsel, attorney Kalis, represented to the court on April 5, 2022, that appellant was "competent" and "not otherwise diminished such that she required a guardian ad litem." Following this representation of appellant's competency, the trial court, in its April 11, 2022 order, ordered Kalis to file a dismissal of the motion for guardianship.

{¶ 63} Although Kalis never filed the requested dismissal, and so the motion for guardianship remained outstanding, "[a] motion not expressly decided by a trial court when the case is concluded is ordinarily presumed to have been overruled." *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 13; *see also City of Huron v. Holsapple*, 1997 WL 457971, *2 (6th Dist. Aug. 8, 1997) ("When a trial court fails to rule on a motion, an appellate court generally will presume that it was overruled."). In this case, the fact that the trial court granted the divorce without pursuing the matter of appellant's competency indicates that the trial court overruled the motion for guardianship.

19.

{¶ 64} In support of her claim that the motion for guardianship should have been granted, appellant points to Mock's inability to assist her or to make her understand the process and to appellant's aberrant and disruptive behavior in court. She also points to her own failure to complete paperwork that would have allowed her to request temporary spousal support.

{¶ 65} Accepting these statements as true, we note that Mock never testified to or produced any documentary evidence to suggest that she was unable to assist appellant because of appellant's so-called "diminished capacity." In fact, Mock did not submit any evidence to establish that appellant was mentally impaired or otherwise suffered from diminished capacity.

{¶ 66} And although appellant did not assist in completing discovery or temporary spousal support paperwork, in December 2021, she apparently had no trouble propounding, pro se, interrogatories and a request for production of documents to appellee. During the same time period, she also filed a notice of appearance/self-represented with the court, and a motion for continuance of a scheduled pretrial.

{¶ 67} Thus, there is nothing in the record to suggest that appellant was anything other than a competent, but difficult, client. We note that prior to her appeal, appellant herself strongly opposed her counsel's motion for guardianship, going so far as to request time to secure counsel who would represent her in opposing it.

20.

{¶ 68} Under the circumstances of this case, we cannot say that the trial court abused its discretion in overruling the motion for guardianship. Accordingly, appellant's first assignment of error is found not well-taken.

**Second Assignment of Error**

{¶ 69} Appellant argues in her second assignment of error that the trial court erred as a matter of law when it failed to equitably divide the marital property. In support of this claim, appellant states that "[t]he trial court awarded over half of the property to appellee," and that "[a]ppellant received less than half of the marital property." Thus, appellant is arguing that the trial court committed error as a matter of law when it failed to equally divide the marital property.

{¶ 70} As indicated above, the total value of the marital property awarded to appellee was $563,241.11, and the total value of the marital property awarded to appellant was $425,403.33. The division was, in fact, unequal. It is well-established, however, that "an equitable division of marital property need not be an equal one," *Dunn v. Dunn,* 2010-Ohio-6508, ¶ 15 (6th Dist), therefore, "'[t]he mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion.'" *Id.*, quoting *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus.

{¶ 71} Reflecting these principles, R.C. 3105.171(C)(1) provides guidance as to how equitable division is to be achieved:

> [T]he division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court

21.

determines equitable. In making a division of marital property, the court shall consider *all relevant factors*, including those set forth in division (F) of this section.

(Emphasis added.)

{¶ 72} The factors set forth in R.C. 3105.171(F) that are relevant to instant case are as follows:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;
* * *

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 73} The trial court specified in its final judgment entry of divorce that it had considered the R.C. 3105.171 factors in structuring the property division in this matter. Our review of the trial court's decision and final judgment entry of divorce convinces us that the court did, in fact, consider all relevant factors -- including each of the relevant factors under R.C. 3105.171(F) -- and applied those factors in light of the facts adduced at trial.

{¶ 74} On the first page of its decision, the trial court noted that appellant and appellee were married on July 30, 1998, thereby evidencing the court's awareness and consideration of the duration of the marriage. In the section of its decision devoted to the division of marital property, the court expressly examined, among other things, the assets

22.

and liabilities of the spouses, including the value of the equity in the marital home; the value of and loan balance for appellee's BMW; and the cost of the remaining two lease payments on appellant's 2020 Jeep. In addition, the trial listed the various retirement assets belonging to appellee, and further noted that appellant may have had $10,000-15,000 in retirement assets of her own. Next, the trial court listed the balances for the three credit cards belonging to the parties.

**{¶ 75}** At the end of its analysis, the trial court acknowledged that the division of marital property was not equal, finding that "an equal division of the parties' property would be inequitable considering the length of time the parties have lived separately, the fact that [appellee] now resides in Florida, and the fact that [appellee] paid the bills associated with the marital home, all vehicles of the parties, and his personal expenses and bills during the pendency of this cause without a court order." The court found the division of assets and liabilities in this case to be "fair and equitable."

**{¶ 76}** Appellant argues that the trial court's analysis neglected to consider factors such as the liquidity of the property to be distributed (R.C. 3105.171(F)(4)); the costs of sale and tax consequences of accessing the qualified retirement account (R.C. 3105.171(F)(6) and R.C. 3105.171(F)(7)); and the costs of sale of the home (R.C. 3105.171(F)(7)). As the trial court was deprived of evidence to address these factors -- due, at least in part, to appellant's refusal to comply with the discovery process and her choosing not to participate in the final hearing -- the trial court did not err in failing to consider them.

23.

**{¶ 77}** Finally, appellant alleges that the trial court committed error by not specifying the dates used to determine the duration of the marriage. R.C. 3105.171(A)(2) provides that "during the marriage" means whichever of the following is applicable:

> (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

> (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

**{¶ 78}** The statute, as written, "'creates "a presumption that the proper date for termination of the marriage is the date of the final divorce hearing."'" *Budd v. Budd*, 2011-Ohio-565, ¶ 8 (9th Dist.), quoting *Bowen v. Bowen,* 132 Ohio App.3d 616, 630 (9th Dist. 1999). (Additional quotation omitted.) Here, the trial court did not impose a de facto termination date as provided by R.C. 3105.171(A)(2)(b), therefore, the presumption is that "during the marriage" is defined pursuant to R.C. 3105.171(A)(2)(a), which begins on the date of the parties' marriage, on July 30, 1998, and continues through the date of the final divorce hearing, December 8, 2022.

**{¶ 79}** In this case, where the trial court considered the statutory factors set forth at R.C. 3105.171(C)(1) in dividing the marital property of the parties and, having found that an equal division would be inequitable, made an equitable division of the property,

24.

the trial court did not abuse its discretion. Appellant's second assignment of error is, therefore, found not well-taken.

## Third Assignment of Error

**{¶ 80}** Appellant argues in her third assignment of error that the trial court erred as a matter of law when it made a spousal support order before equitably dividing the marital property. According to appellant, she was awarded the marital home "as and for spousal support," "and not via a division of property order."

**{¶ 81}** Under R.C. 3105.18(A), spousal support is defined not to include "any payment made to a spouse or former spouse * * * that is made as part of a division or distribution of property or a distributive award under section 3105.171 of the Revised Code." In addition, R.C. 3105.18(B) provides that "[i]n divorce and legal separation proceedings, upon the request of either party and *after the court determines the division or disbursement of property under section 3105.171 of the Revised Code*, the court of common pleas may award reasonable spousal support to either party." (Emphasis added.)

**{¶ 82}** Appellant attempts to support her argument by stating: (1) that the "trial court did not define 'equity'" as related to the marital home; and (2) that the spousal support award "was not separately made in the manner required by the statute." Appellant arrives at this conclusion because she received a spousal support award composed of real property and believes this constitutes an improper commingling of the marital property division and the spousal support award.

25.

{¶ 83} In this case, the trial court's decision begins with a section devoted to the division of marital property and an express statement that this division "must be made prior to and without regard to an award of spousal support." The middle of the section details how each item of marital property is to be divided. And a table at the end of the section provides a summary of all of the parties' assets and liabilities as divided by the trial court's division of property. The table depicts an equal division of equity from the marital home, with each party allocated the sum of $131,786.15. (A combined equity figure of $263,572.30 is arrived at by subtracting the remaining mortgage balance of $301,427.70 from the home's market value of $565,000.) Only after finding the division of assets and liabilities to be fair and equitable did the court go on in its decision to consider the issue of spousal support.

{¶ 84} We find that the trial court's decision establishes both the definition of equity as related to the marital home and the fact that the trial court divided the marital property prior to making any determination about spousal support.

{¶ 85} The trial court acknowledged in its decision that when making a spousal support award it must "examine the statutory factors set forth in R.C. 3105.18(C)." After conducting an analysis of these factors upon the testimonial and documentary evidence submitted to it at trial by appellee, the court concluded that an award of spousal support was reasonable and appropriate.

{¶ 86} At trial, the court had expressed concern -- based on appellant's lack of cooperation during the entire case -- as to how appellant's unwillingness to participate in

26.

the process and follow court orders would affect an order to sell the marital home. The court stated that it could "order the house sold, well she is not going to cooperate with the sale, and by the time that is done, the property may be – there may be no value left."

{¶ 87} In its decision, the trial court opted to implement a lump sum distribution of spousal support using the previously divided real property, including appellee's equity interest in the same of $131,786.15. In this way, the trial court awarded appellant spousal support and, at the same time, protected appellee against financial loss that could arise from any lack of cooperation by appellant in selling the marital home. Under R.C. 3105.18(B), a court may award spousal support "in real or personal property, or both."

{¶ 88} Here, we find that the trial court properly divided the marital property pursuant to R.C. 3105.171 prior to addressing the propriety of an award of spousal support under R.C. 3105.18. Having found that an award of spousal support was appropriate and reasonable, the trial court appropriately awarded the marital home as spousal support, in conformity with R.C. 3105.18(B). Appellant's third assignment of error is, therefore, found not well-taken.

**Appellant's Fourth Assignment of Error**

{¶ 89} Appellant argues in her fourth assignment of error that the trial court erred as a matter of law when it failed to consider the statutory factors set forth in R.C. 3105.18(C)(1) when making its spousal support award. Those factors are as follows:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

27.

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶ 90} As a preliminary matter, we note that appellant makes multiple arguments based on information that is not in the appellate record. "Appellate review of a trial court's order is limited to the record made in the trial court." *Salpietro v. Salpietro,* 2023-

28.

Ohio-169, ¶ 9, (6th Dist.) "The record that we can consider is 'the record as it existed at the time the trial court rendered judgment.'" *Id.*, quoting *Leiby v. Univ. of Akron,* 2006-Ohio-2831, ¶ 7, (10th Dist.). (Additional citations omitted.) "Basically, absent some legal authorization, we cannot consider facts that were not presented to the trial court; documents that were not filed with, admitted into evidence by, or proffered to the trial court; or any acts that occurred or issues that arose after a party filed their notice of appeal." *Salpietro* at ¶ 10, citing *Baker v. Senior Emergency Home Repair EOPA*, 2015-Ohio-3083, ¶ 11 (6th Dist.).

{¶ 91} In this assignment of error, appellant claims that the trial court failed to consider evidence of her mental and physical health and the nature of her disability, all of which is evidence that she never offered at trial, and so was never put before the trial court. In addition, she challenges the sufficiency of appellee's evidence as related to her business, income, and employment. Such evidence she declined to produce in response to discovery -- despite being ordered to do so by the court. Finally, she claims she was denied an opportunity to object to appellee's exhibits regarding average salaries for nurses -- exhibits that were admitted at the trial she elected not to participate in. Applying the law set forth in *Salpietro*, we find that we cannot consider any of the evidence underlying these claims.

{¶ 92} Looking to the trial court's spousal support decision, we see that the trial court considered the R.C. 3105.18(C)(1) factors when making its award of spousal support, taking into account the duration of the marriage, the ages of the parties, the

29.

incomes and/or relative earning abilities of the parties, the education of the parties, and relative assets and liabilities. The trial court also observed that appellant "failed to provide her bank account or retirement asset information, thus her liquid assets are unknown at this time." As the trial court rendered a decision based upon its application of the statutory factors to appellee's unrebutted testimony and documentary exhibits, there is no abuse of discretion. Accordingly, appellant's fourth assignment of error is found not well-taken.

### Appellant's Fifth Assignment of Error

{¶ 93} Appellant argues that the trial court denied her due process of law by denying her oral motion for a continuance to secure representation on the day of trial.

{¶ 94} "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Id.*, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Whether there was an abuse of discretion by the trial court in denying a motion for continuance involves a balancing test, weighing concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice against any potential prejudice to a defendant. *Unger* at 67. Factors that the trial court should consider include "the length of the delay requested; whether other continuances have

30.

been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Id.* at 67-68. An appellate court examines the same factors in its review of a trial court's denial of a motion for continuance. *Schiesswohl v. Schiesswohl*, 2004-Ohio-1615, ¶ 20 (9th Dist).

{¶ 95} In the instant case, the firm trial date of December 8, 2022, had originally been scheduled on July 21, 2022, in open court, with appellant in attendance. At the hearing, appellant clearly acknowledged her availability to appear on the scheduled trial date.

{¶ 96} On August 15, 2022, the trial court issued a firm trial order, which contained certain critical filing dates, and an order stating that "the trial date [of December 8, 2022] allows [appellant] sufficient time to retain new counsel if she chooses," and that "[f]ailure to obtain counsel by the scheduled trial date will operate as a waiver of counsel and [appellant] will be held to the same standard as an attorney at trial."

{¶ 97} Appellant had approximately 140 days from the date of the July 21, 2022 hearing, and 113 days from the date of the court's journalized pre-trial order, to either retain legal counsel, or be prepared to proceed pro se at trial on December 8, 2022. In failing to come prepared for trial, either with or without counsel, appellant clearly

31.

contributed to the circumstance which gave rise to her request for a continuance. As had been the case throughout the pendency of this action, appellant chose not to comply with the rules of the court, the civil rules, and court orders.

{¶ 98} As for the legitimacy of appellant's request, it is noted that prior to the commencement of the scheduled hearing, appellant called the court to say she was sick, and then upon commencement of the proceedings, appellant stated that she wanted a continuance because she needed an attorney. When the trial court tried to explain to appellant that she was in court when the trial date was scheduled, she continually interrupted and argued with the judge.

{¶ 99} Regarding the inconvenience to litigants and witnesses that would be caused by a delay in the trial, the trial court observed that appellee had come in from Florida for the trial, while appellee's witness had come in from New Jersey.

{¶ 100} After consideration of all of the facts before it, the trial court properly concluded that appellant had failed to show good cause as to why the trial court should continue the 23-month-old case, and the motion was denied. The decision was certainly not so arbitrary as to violate due process. Therefore, appellant's fifth assignment of error is found not well-taken.

32.

**Conclusion**

{¶ 101} The judgment of the Lucas County Court of Common Pleas, Domestic

Relations Division, is affirmed. Appellant is to pay the costs of appeal pursuant to App.R.

24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                          _____
                                                              JUDGE

Gene A. Zmuda, J.                          

                                              _____
Myron C. Duhart, J.                                   JUDGE
CONCUR.

                                              _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.