[Cite as *C.D. v. T.D.*, 2025-Ohio-4976.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

C.D.                                                    Court of Appeals No.  L-25-00079

     Appellee                                     Trial Court No.  DR020230117

v.

T.D.                                                    **DECISION AND JUDGMENT**

     Appellant                                    Decided: October 31, 2025

* * * * *

Martin J. Holmes, Jr., for appellee.

T.D., pro se.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, T.D., pro se, appeals (1) the March 19, 2025 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, denying review of temporary emergency custody, and (2) its March 20, 2025 judgment, granting T.D. and C.D. a divorce from one another and deciding disputed issues relative to the divorce.  For the following reasons, we conclude that T.D.'s appeal of the March 19, 2025 judgment is mooted by entry of the March 20, 2025 judgment.  We affirm, in part, and reverse, in part, the March 20, 2025 judgment.

## I. Background

{¶ 2} C.D. and T.D. were married on November 20, 2010. They have three children who were born in 2009, 2011, and 2015. C.D. filed a complaint for divorce on February 21, 2023. During the pendency of this action, several emergency, temporary, and interim orders were entered concerning physical custody of the parties' minor children. C.D. was awarded temporary physical custody and, later, was designated their temporary residential parent and legal custodian. T.D. filed "emergency" motions for a change in temporary custody. Her motions were denied in a judgment journalized on March 19, 2025.

{¶ 3} The case was tried to a magistrate from June 25 to 27, 2024. The magistrate issued a written decision signed March 17, 2025, filed March 19, 2025, and journalized March 20, 2025. In a judgment journalized on March 20, 2025, the trial court adopted the magistrate's decision and entered judgment granting the parties an absolute decree of divorce from one another; designating C.D. the children's residential parent and legal custodian; awarding T.D. supervised parenting time of one two-hour session per week; ordering T.D. to undergo mental-health treatment; dividing the marital property; calculating T.D.'s child-support obligation, but reducing it to zero because of skepticism about T.D.'s ability to find employment; ordering C.D. to pay spousal support of $3,570 per month for 40 months ($3,000 per month plus $500 toward arrears and a $70 monthly processing charge) beginning July 1, 2024; and ordering T.D. to pay a portion of C.D.'s attorney fees.

2.

{¶ 4} Without a trial transcript, T.D. filed "objections" to the March 20, 2025 judgment. While Civ.R. 53(D)(3)(b)(ii) requires objections to a magistrate's decision to be "specific and state with particularity all grounds for objection," T.D.'s objections—like most of her filings over the life of the case—mainly consisted of unsubstantiated accusations of criminal conduct by C.D., his attorneys, the trial judge, and others. Very generously interpreted, T.D.'s objections challenged the custody determination, the imposition of the costs of supervised visitation, the award of attorney fees, and strangely, the child support award (which had been reduced to $0). The trial court entered a judgment permitting T.D. time to obtain the trial transcript. In the meantime, T.D. filed a Civ.R. 60(B)(3) motion, and in it she claimed that she was not required to obtain a transcript. Accordingly, the trial court entered a judgment denying the Civ.R. 60(B)(3) motion and revoked the additional time that T.D. had been given to secure trial transcripts.

{¶ 5} T.D. appealed the trial court's March 19, 2025 judgment denying review of temporary emergency custody, and its March 20, 2025 "judgment entry with permanent order" adopting the magistrate's decision. T.D.'s appellate brief is difficult to interpret. Like her filings in the trial court, it is filled with unsubstantiated accusations of wrongdoing against C.D., his family, his attorneys, mental-health professionals, law enforcement agencies, and various court personnel, including trial judges and magistrates. It criticizes judges and prosecutors involved in other cases that arose after the filing of the divorce action and accuses them of criminal conduct too.

3.

**{¶ 6}** T.D.'s assignments of error are likewise difficult to decipher. Without republishing her numerous unsupported allegations of criminal activity or addressing judgments not properly before this court, we interpret her assignments as alleging error in the trial court's decision (1) designating C.D. the residential parent and legal custodian of the children, (2) restricting parenting time, (3) dividing the parties' property inequitably, (4) awarding attorney fees to C.D., and (5) miscalculating the length of the marriage, thereby affecting the award of spousal support.

## II. Law and Analysis

**{¶ 7}** As summarized above, T.D. has appealed (1) the March 19, 2025 judgment denying review of temporary emergency custody, and (2) the March 20, 2025 "judgment entry with permanent order" adopting the magistrate's decision. Given that the March 20, 2025 judgment provides permanent orders pertaining to custody, we find that this judgment renders moot any judgment relating to emergency, temporary, or interim custody orders. *See Bentley v. Bentley,* 2008-Ohio-3279, ¶ 15 (5th Dist.) ("We find the issue regarding the granting of the emergency order has been resolved by the trial court's final decision and is therefore moot as it pertains to this appeal.").

**{¶ 8}** As to the March 20, 2025 "judgment entry with permanent order" adopting the magistrate's decision, we have very generously interpreted T.D.'s brief as challenging the court's determinations concerning allocation of parental rights and responsibilities, parenting time, property division, attorney's fees, and spousal support. C.D. does not address any of T.D.'s specific challenges, but he correctly observes that our standard of

4.

review as to all the challenged aspects of the judgment is an abuse of discretion. *Kauffman v. Kauffman,* 2014-Ohio-2559, ¶ 9 (6th Dist.); *Newcomer v. Newcomer*, 2013-Ohio-5627, ¶ 88 (6th Dist.); *Row v. Row,* 2022-Ohio-2525, ¶ 9 (6th Dist.).  C.D. contends that the trial court did not abuse its discretion in any respect.

{¶ 9} Before we examine T.D.'s challenges to the trial court judgment, we observe that T.D. (1) did not file the trial transcripts, and (2) did not properly preserve error here.

{¶ 10} First, judgment was entered after a three-day trial, yet T.D. did not file a transcript of proceedings or an acceptable substitute.  "Litigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants." *Yocum v. Means*, 2002-Ohio-3803, ¶ 20 (2d Dist.).  Under App.R. 9(B)(1) an appellant is obligated "to ensure that the proceedings the appellant considers necessary for inclusion in the record . . . are transcribed in a form that meets the specifications of App.R. 9(B)(6)."  Without a trial transcript or an acceptable substitute, "'we cannot speculate what the testimony was at trial, and we are constrained to presume the regularity of the proceedings below unless the limited record for our review affirmatively demonstrates error.'" *Windsor v. Francis,* 2012-Ohio-4863, ¶ 5 (2d Dist.), quoting *Albritton v. White,* 2011-Ohio-3499, ¶ 15 (2d Dist.).

{¶ 11} Related to this, in order to assign as error on appeal the trial court's adoption of a magistrate's findings of fact and conclusions of law, the party must have objected to those findings or conclusions as required by Civ.R. 53(D)(3)(b).  Civ.R. 53(D)(3)(b)(iii) requires an objection to a factual finding to be supported by "a transcript

5.

of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." If a party fails to comply with Civ.R. 53(D)(3)(b), appellate review is limited to plain error. Civ.R. 53(D)(3)(b)(iv).

{¶ 12} The Supreme Court of Ohio has instructed that when applying the doctrine of plain error in a civil case, "the doctrine is sharply limited to the *extremely rare* case involving *exceptional* circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself. . . . The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court . . . ." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997). (Emphasis sic.)

{¶ 13} Here, as we interpret her objections in the trial court, T.D. challenges the factual findings underlying the allocation of parental rights, supervised parenting time, the award of attorney fees, the division of marital property, and the amount of spousal support. Because of her failure to comply with Civ.R. 53(D)(3)(b), we will review her challenges only for plain error.

### A. Allocation of Parental Rights and Responsibilities

{¶ 14} In any divorce action involving minor children of the marriage, the court must "allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children," taking into consideration the best interest of the children.

6.

R.C. 3109.04(A)(1), (B)(1), and (F)(1).  We review a trial court's decision regarding the allocation of parental rights under an abuse-of-discretion standard.  *Marlowe v. Marlowe,* 2023-Ohio-1417, ¶ 135 (6th Dist.).

{¶ 15} The magistrate's decision articulates the best-interest factors of R.C. 3109.04(F)(1) that he was required to consider in allocating parental rights and responsibilities:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent . . . has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code . . . involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding . . .;

7.

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 16} T.D.'s mental health was of paramount concern to the magistrate. The magistrate found that T.D.'s diminished mental health and refusal to acknowledge the existence of her diminished mental health outweighed all other factors. However, he also found that the children's interaction with T.D. had been negative; T.D., for unknown reasons, took the children out of state with a burner phone and passports; the children are living with C.D. in the marital home and are having no adjustment issues with school, their home, or their community; T.D. has been subject to criminal proceedings in Sylvania and Oregon Municipal courts concerning allegations relating to C.D. and the children; T.D. has made unsubstantiated accusations that C.D. is involved in serious criminal activity and has conspired with court employees; one of the court's magistrates was forced to obtain a civil protection order against T.D.; T.D. has engaged in egregious public behavior directly affecting C.D. and the children; and T.D. was briefly admitted to a psychiatric hospital and has impeded the court's mandated investigation into her mental health by refusing to fully participate or cooperate in the release of pertinent medical records.

8.

{¶ 17} Although T.D. vehemently denies that her mental health is diminished and persists in accusing C.D. of criminal activity, the exhibits contained in the record[1] support the trial court's findings, T.D.'s claims about C.D.'s alleged criminal conduct are unsubstantiated, and the absence of a transcript and lack of proper objections in the trial court leave us with no choice but to accept the magistrate's factual findings. There is nothing before the court that demonstrates plain error in the allocation of parental rights and responsibilities.

### B. Parenting Time

{¶ 18} The trial court awarded T.D. supervised parenting time at the Children's Rights Collaborative one time per week for two hours, subject to the available hours at CRC. It provided for the possibility of a third-party supervisor in the future. It also restricted T.D.'s access to the children's activities. T.D. challenges these restrictions.

{¶ 19} In addition to allocating the parental rights and responsibilities for the care of the children primarily to one of the parents, designating that parent as the residential parent and the legal custodian of the child, and dividing between the parents the other rights and responsibilities for the care of the children, the court must provide for the non-residential parent to have continuing contact with the children and must make just and reasonable orders permitting parenting time "under the conditions that the court directs[.]" R.C. 3109.04(A)(1) and 3109.051(A). When a trial court determines parenting time, it must consider the factors enumerated in R.C. 3109.051(D). We review

---

[1] Sealed Court Exhibits A and C are contained in the record.

9.

a trial court's decision regarding the allocation and conditions of parenting time under an abuse-of-discretion standard. *Row,* 2022-Ohio-2525, at ¶ 9 (6th Dist.).

{¶ 20} The magistrate's decision articulates the factors that must be considered under R.C. 3109.051(D) in determining the appropriate conditions for parenting time:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity. . . .;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent . . . as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to

10.

a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

. . .

(12) . . . [W]hether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding . . . ;

. . .

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

. . .

(16) Any other factor in the best interest of the child.

{¶ 21} Again, the magistrate's primary concern was T.D.'s mental health. The magistrate specifically stated that he was restricting T.D.'s parenting time because T.D.'s mental state caused him concern for the children's health and safety. Given T.D.'s conspiracy theories about C.D.'s alleged criminal activity, the magistrate found that he could not in good faith allow T.D. to exercise unrestricted parenting time. Moreover, he found that parenting time with the boys had not gone well; the boys had witnessed T.D.'s erratic behavior in public; the boys had fully resisted parenting time with T.D.; the parties' daughter, the youngest of the children, had begun expressing apprehension about visits with T.D.; T.D. had taken the children out of state with a burner phone and passports; and C.D. has been cooperative in modifying scheduled visits based on everyone's availability.

11.

**{¶ 22}** Although T.D. vehemently denies that her mental health is diminished and persists in accusing C.D. of criminal activity, the exhibits contained in the record support the trial court's findings, T.D.'s claims about C.D.'s alleged criminal conduct are unsubstantiated, and the absence of a transcript and lack of proper objections in the trial court leave us with no choice but to accept the magistrate's findings. There is nothing before the court that demonstrates plain error in the restrictions placed on T.D.'s parenting time.

### C. Division of Marital Property

Under R.C. 3105.171(B), "[i]n divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property. . . . [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The division of marital property should be equal unless that would be inequitable. R.C. 3105.171(C)(1). If equal division would be inequitable, the court must consider the following factors:

(1) The duration of the marriage;[2]

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

---

[2] Because this is at issue elsewhere, we observe that the magistrate used the proper duration of the marriage when it divided the parties' marital property.

12.

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F).  We review the trial court's division of marital property for an abuse of discretion.  *Turner v. Turner,* 2024-Ohio-2200, ¶ 60 (6th Dist.).

{¶ 23} The magistrate's decision indicates that personal property was divided by agreement.  As to other property, he determined what was marital property and what was separate property.  The retirement plans that were marital property were equally divided.  Each party was awarded his or her own vehicle, along with the responsibility for payments, insurance, and upkeep.  C.D. received the marital home—with orders to refinance and remove T.D. from any obligation—with T.D. to receive an amount equal to half the current equity.

{¶ 24} T.D. argues that she and C.D. "did not go over any financial information until after the 25th, no division of assets was properly documented [or] discussed in the level of detail required for an equitable divorce or agreed upon (sic).  To [her]

13.

recollection, on 6/25/24, we started out the trial by signing something that was not *Stipulations*."

{¶ 25} T.D. does not specify what property was left to be divided or explain in what manner division of the property was inequitable. In any event, the absence of a transcript and lack of proper objections in the trial court leave us with no choice but to accept the magistrate's findings and conclusions.[3] There is nothing before the court that demonstrates plain error in the division of the marital property.

### D. Attorney Fees

{¶ 26} R.C. 3105.73(A) provides:

> In an action for divorce . . ., a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

We review a trial court's decision to award attorney's fees under an abuse-of-discretion standard. *Newcomer*, 2013-Ohio-5627, at ¶ 88 (6th Dist.).

{¶ 27} The court ordered T.D. to pay a portion of C.D.'s attorney's fees. The magistrate's decision indicates that he considered the factors for awarding attorney's fees, and decided to do so here because each party was awarded liquid assets and T.D. was responsible for prolonging the case. Problematically, however, in paragraph 134 of the

---

[3] The magistrate cites the agreement for division of personal property as Plaintiff's Exhibit 48. Likely because the trial transcripts were never ordered, the exhibits are not contained in the record on appeal. This court has before it only sealed Court Exhibits A and C.

14.

magistrate's findings of fact, the magistrate found that T.D. should pay $5,000 toward C.D.'s attorney fees, while in paragraph 38 of the decision, T.D. was ordered to pay $7,500. Because it is not clear which amount the magistrate intended to award, we remand this matter to the trial court so that it can indicate which amount was properly awarded.

### E. Spousal Support

{¶ 28} T.D. argues that she was awarded insufficient spousal support based on the magistrate's miscalculation of the length of the marriage. She points out that in paragraph 102 of the magistrate's March 20, 2025 decision, the magistrate found that [t]he parties have been married for almost ten (10) years," when, in fact, by the time of the trial, they had been married almost 14 years.

{¶ 29} R.C. 3105.18(B) provides that "[i]n divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(C)(1) sets forth the factors that must be considered "in determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support." Those factors are as follows:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

> (b) The relative earning abilities of the parties;

15.

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1). An award of spousal support is generally within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Newcomer*, 2013-Ohio-5627, at ¶ 22 (6th Dist.).

16.

{¶ 30} Clearly, the duration of the marriage is one of the factors to be considered in awarding spousal support. R.C. 3105.18(C)(1)(e). T.D. correctly points out that in the context of considering the R.C. 3105.18(C)(1) factors, the magistrate observed that the parties had been married for not even ten years when, in fact, they had been married closer to 14 years at the time of trial. The magistrate did recognize in paragraph 84 that the parties were married for 14 years for purposes of property division and spousal support. But because of the misstatement in paragraph 102—specifically discussing the duration of the marriage for purposes of determining spousal support—it is not clear if the magistrate based the award on the correct duration of the marriage. Because it is not clear, we remand this matter to the trial court so that it can either recalculate the award or amend the judgment to reflect that the correct duration of the marriage was considered.

{¶ 31} As for the other factors, the magistrate considered C.D.'s salary and his continued ability to work; T.D.'s previous role as a stay-at-home mother and the unlikelihood that she will find employment given her recent incarceration, the temporary protection orders against her, and her persistent denials that her mental health is diminished; T.D.'s lost income production capacity based upon her role as a stay-at-home mother; C.D.'s increased earning capacity while T.D. stayed home with the children; the award of the marital residence to C.D. with T.D. to share in the equity; the existence of C.D.'s two retirement plans and T.D.'s pre-marital retirement plan; that both C.D. and T.D. have college degrees; that both C.D. and T.D. have car payments; and the extent to which T.D.'s employment opportunities are hindered by her mental health status.

17.

{¶ 32} Although T.D. vehemently denies that her mental health status is diminished, the exhibits contained in the record support the trial court's findings, and the absence of a transcript and lack of proper objections in the trial court leave us with no choice but to accept the magistrate's factual findings other than with respect to the duration of the marriage—that possible error is apparent on its face.

{¶ 33} For all these reasons, we find T.D.'s assignment of error well-taken, in part, and not well-taken in part.

### III. Conclusion

{¶ 34} As summarized in the next three paragraphs, we affirm, in part, and reverse, in part, the March 20, 2025 "judgment entry with permanent order" of the Lucas County Court of Common Pleas, Domestic Relations Division. We dismiss as moot T.D.'s challenges to its March 19, 2025 "judgment entry on review of temporary emergency custody."

{¶ 35} We reverse and remand the March 20, 2025 "judgment entry with permanent order" *only to the extent* that (1) it orders T.D. to pay $7,500 toward attorney fees when the magistrate's decision conflicts as to the amount intended to be imposed— i.e., paragraph 134 of the magistrate's decision imposes $5,000, while paragraph 38 (page 37) imposes $7,500; (2) the magistrate's decision incorrectly states at paragraph 102 that the duration of the marriage was less than ten years when it was actually almost 14 years.

{¶ 36} On remand, the court must clarify the amount of attorney fees it intended to award. It must also clarify whether the correct duration of the marriage was used in

18.

awarding spousal support.  If the correct duration was not used, it should reconsider the spousal-support award using the correct duration.  If the correct duration was used, it should issue a judgment or a nunc pro tunc entry indicating that the correct duration was used in the calculation.

{¶ 37} *In all other respects*, we affirm the March 20, 2025 "judgment entry with permanent order."  C.D. and T.D. are ordered to share in the costs of this appeal under App.R. 24.

Judgment affirmed, in part,
Reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J. _____

_____
JUDGE

Gene A. Zmuda, J. _____

Charles E. Sulek, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.